## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| v. | ) | **06-cr-00539-03** |
| | ) | |
| **LUIS MANUEL RODRIGUEZ** | ) | **CIVIL ACTION NO.** |
| | ) | **09-cv-01476** |

---

### MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                 **July 18, 2011**

Pending before the Court are Luis Manuel Rodriguez's ("Petitioner" or "Defendant")

Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255[1]

and the Government's Motion to Dismiss Petitioner's § 2255 motion.[2]

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On September 27, 2006, along with two co-defendants, Petitioner was indicted by a

federal grand jury charging Petitioner with conspiracy to distribute 50 grams or more of cocaine

base ("crack") and heroin, in violation of 21 U.S.C. § 846 (Count I) and six substantive counts

for separate sales of crack in furtherance of the conspiracy, in violation of 21 U.S.C. § 841 (a)(1),

---

[1]     Doc. No. 165.  Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on April 7, 2009 [Doc. No. 163].  Because Petitioner did not use the Court's standard form for Section 2255 proceedings which ensure that movants receive statute of limitations warnings required by United States v. Thomas, 221 F.3d 430 (3d Cir. 2000), the Court directed the Clerk of Court to furnish Petitioner with a blank copy of the standard form and directed Petitioner to complete the form and sign his petition.  Doc. No. 164.  Subsequently, Petitioner refiled his Motion to Vacate, Set Aside or Correct Sentence on May 13, 2009 using the correct standard form.  See Doc. No. 165.

[2]     Doc. No. 167.

(b)(1)(B), and (b)(1)(C).[3]  The indictment also set forth a notice of forfeiture arising from the

conspiracy charge, charging criminal forfeiture under 21 U.S.C. § 853.

Within the two years prior to the federal indictment, Petitioner was convicted in the

Philadelphia Court of Common Pleas of four offenses for manufacture, delivery and/or

possession with intent to manufacture or deliver a controlled substance.[4]  For three of those

offenses, Petitioner was sentenced to a term of imprisonment of 6 to 12 months, and for one such

offense, Petitioner was sentenced to a term of  imprisonment of 6 to 23 months.[5]  Because of

these prior convictions, Petitioner faced a federal statutory mandatory minimum sentence of life

imprisonment on Count I of the federal indictment.[6]

On July 18, 2008, Petitioner entered into a written plea agreement with the Government.[7]

At the time, Petitioner was represented by Court-appointed counsel, Edward F. Borden, Jr.[8]

Under the terms of the Guilty Plea Agreement, Petitioner agreed to plead guilty to all Counts of

---

[3]      Doc. No. 26.  The additional counts included: distribution of crack and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count II); distribution of crack and heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts III & IV); and distribution of crack in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts V, VI, & VII).

All references to 28 U.S.C. § 841 herein refer to the statutory provisions in effect when Petitioner was sentenced in October 2008.

[4]      See Presentence Investigation Report at 12; Tr. of Sentencing Hr'g ("Sentencing Tr.") [Doc. No. 144] (October 20, 2008) 7:25–8:20.  This transcript is incorrectly titled "Transcript of Change of Plea Hearing."

[5]      Sentencing Tr. 8:2–6.

[6]      28 U.S.C. 841(b)(1)(A)(iii).

[7]      Guilty Plea Agreement [Doc. No. 130]; Plea Tr. 16:20–25.

[8]      See Guilty Plea Agreement at 8; Plea Tr. 3:6; 10:14–25.

the indictment, not to contest forfeiture, and to pay a special assessment of $100 for each of the 7

Counts, for a total of $700.[9]  The Plea Agreement also provided that prior to Defendant's entry of

plea, the Government would file an Information under 21 U.S.C. § 851, which would list only

one prior state felony drug conviction rather than all of Petitioner's prior felony convictions.[10]

Had the Information listed two or more prior felony convictions, Petitioner would have been

subject to a mandatory minimum sentence of life imprisonment on Count I of the indictment.[11]

The Plea Agreement clearly stated that inclusion of a prior felony in the Information subjected

Petitioner to a mandatory minimum sentence of 20 years imprisonment.[12]

On July 17, 2008, a day before Petitioner signed the Plea Agreement and this Court held a

Change of Plea Hearing, the Government filed an Information Charging Prior Offenses asserting

that, on June 29, 2005, Petitioner was sentenced to 6 to 23 months imprisonment following his

conviction on a felony controlled substance charge—manufacturing, delivering, or possession

with intent to manufacture or deliver a controlled substance.[13]  The Information was served on

Petitioner's attorney that same day.[14]

Thus, under the Plea Agreement and Information, Petitioner faced a statutory mandatory

---

[9]      Guilty Plea Agreement ¶ 1.

[10]     Guilty Plea Agreement ¶ 4.

[11]     21 U.S.C. § 841(b)(1)(A)(iii).

[12]     Guilty Plea Agreement ¶ 4.

[13]     Information Charging Prior Offenses [Doc. No. 126] ¶ 1.

[14]     Information Charging Prior Offenses at 3.

minimum of 20 years imprisonment and 10 years supervised release on Count I.[15]  On Count II,

Petitioner faced a minimum of six years supervised release if Petitioner was also sentenced to a

term of imprisonment under that Count, with no statutory minimum term of imprisonment.[16]

And on each of Counts III through VII, he faced a statutory mandatory minimum of 10 years

imprisonment and eight years supervised release.[17]  Petitioner faced a statutory maximum of life

imprisonment, up to lifetime supervised release, and a fine of up to $8 million on Count I; a

statutory maximum of 30 years imprisonment and a fine of up to $2 million on Count II; and a

maximum of life imprisonment and a fine of up to $4 million or twice the amount of loss or gain

caused by the offense, whichever is greater, on each of Counts III through VII.[18]  The Plea

Agreement laid out these statutory maximum and minimum sentences in detail, and provided that

"defendant understands, agrees and has had explained to him by counsel that the Court may

impose those statutory maximum and mandatory minimum sentences . . . ."[19]

The Plea Agreement did not restrict the Government from making sentencing

recommendations that diverged from the statutory minimum sentences or from otherwise

commenting on facts relevant to sentencing.[20]  The Agreement stipulated that either party was

free to argue the applicability of any other provision of the Sentencing Guidelines, including

---

[15]     21 U.S.C. § 841(b)(1)(A)(iii).

[16]     Id. § 841(b)(1)(C).

[17]     Id. § 841(b)(1)(B).

[18]     Id.

[19]     Guilty Plea Agreement ¶ 6.

[20]     Guilty Plea Agreement ¶ 5(a)–(b).

criminal history, and adjustments and departures from the Guidelines.[21]  Further, the Parties

stipulated in the Agreement that more than 50 grams of crack were distributed in furtherance of

the conspiracy, that the Sentencing Guidelines' range to be applied would be based on

distribution of that amount, and that Petitioner was eligible for a 3-level downward adjustment

under Section 3E1.1(a) and (b) of the Guidelines because he accepted responsibility and assisted

in the investigation and prosecution of his misconduct by timely notifying the Government of his

intent to plead guilty and by providing information about his involvement in the offense.[22]

Under the Plea Agreement, Petitioner also waived his rights to appeal or collaterally

challenge his sentence and conviction.  Specifically, the appellate waiver provision of the Plea

Agreement stated that:

> In exchange for the undertakings made by the government in entering this
> plea agreement, the defendant voluntarily and expressly waives all rights to
> appeal or collaterally attack the defendant's conviction, sentence, or any other
> matter relating to this prosecution, whether such a right to appeal or collateral
> attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255,
> or any other provision of law.  This waiver is not intended to bar the assertion
> of constitutional claims that the relevant case law holds cannot be waived.[23]

The waiver provisions specified only limited and specific exceptions.  First, if the

Government appealed from the sentence, Petitioner would be permitted to file a direct appeal of

the sentence.[24]  Second, in the event the Government did not appeal the sentence, Petitioner could

file a direct appeal, but raising only claims that:

---

[21]     Guilty Plea Agreement ¶ 8.

[22]     Guilty Plea Agreement ¶ 8(b)–(d).

[23]     Guilty Plea Agreement ¶ 9.

[24]     Guilty Plea Agreement ¶ 9(a).

> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . ; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; (3) the sentencing judge, exercising the Court's discretion pursuant to <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.[25]

Additionally, the Plea Agreement included an attached Acknowledgment of Rights signed by Petitioner, in which Petitioner averred: "I understand that I do not have to plead guilty;" and "I understand that if I plead guilty, I have waived my right to appeal, except as set forth in appellate waiver provisions of my plea agreement."[26]  Finally, Petitioner averred in the Plea Agreement that he was satisfied by his attorney's representation and that he fully discussed the Agreement with his lawyer.[27]

This Court held a Change of Plea Hearing on July 18, 2008 at which Petitioner was represented by Mr. Borden.[28]  Before entering into a colloquy with Petitioner, Petitioner's interpreter informed the Court that Petitioner told him that he was conversant in English and "is comfortable proceeding," but that the interpreter would stay through the duration of the hearing.[29]

The Court asked Petitioner about his degree of English comprehension, and Petitioner explained he had completed ninth grade, could read and write English, and was able to understand everything he heard in English.[30]  The Court also directed Petitioner to talk with his

---

[25]     Guilty Plea Agreement ¶ 9(b).

[26]     Acknowledgment of Rights ¶¶ 1, 6.

[27]     Guilty Plea Agreement ¶ 11.

[28]     Plea Tr. 3:6.

[29]     Plea Tr. 3:7–20.

[30]     Plea Tr. 5:2–25.

attorney or interpreter if there was anything he did not understand or that was confusing to him.[31] The Court asked whether he had taken any drugs or alcohol in the last 24 hours and whether he was being prescribed medication at the Federal Detention Center where he was being held, and Petitioner confirmed that he had not received such a prescription and had taken no drugs or alcohol prior to the hearing.[32]  Petitioner also confirmed that he did not suffer from any untreated illnesses and felt very good on the day of the hearing.[33]

The Court then engaged in a colloquy with Petitioner to ensure that he was fully aware of his rights, the charges against him and the provisions of the plea agreement; was competent and capable of entering an informed plea; and knowingly, intelligently, and voluntarily gave up his rights to a trial by pleading guilty and entering into the Guilty Plea Agreement.  The Court informed Petitioner of his right to counsel at all stages of the proceedings and asked Petitioner whether he had discussed the case with his counsel, read and reviewed the indictment with counsel and signed, read and reviewed the Guilty Plea Agreement and Acknowledgment of Rights with his counsel, and Petitioner responded that he had done so.[34]  In open court, Petitioner averred that he was satisfied with the representation his attorney had provided.[35]  The Court also asked Petitioner whether his agreement to plead guilty was due to promises or assurances not contained in the written plea agreement or intimidation by any threats or use of force, and

---

[31]     Plea Tr. 6:1–7.

[32]     Plea Tr. 7:25–8:9.

[33]     Plea Tr. 9:25–10:4.

[34]     Plea Tr. 10:5–25; 11:1–12:1; 15:8–15:18; 16:6–8; 17:7–11.

[35]     Plea Tr. 11:4–10.

Petitioner asserted it was not and that he had signed the Plea Agreement of his own free will.[36]
The Court reviewed each charge with Petitioner to ensure that Petitioner understood the charges
against him.[37]  The Court then explored whether Petitioner fully understood the trial rights he
was giving up by pleading guilty by reviewing each of those rights with Petitioner and ensuring
he understood what they meant.[38]

Additionally, the Court entered into a colloquy with Petitioner to ascertain his
understanding of the appellate waiver provisions of the plea agreement:

| The Court: | [I]f you proceeded to trial instead of pleading guilty and if you then were found guilty, do you understand you would be able to appeal that guilty verdict to an Appellate Court, the Third Circuit Court of Appeals? |
|---|---|
| The Defendant: | Yes. |
| The Court: | Do you understand that you would have an attorney represent you in that matter free of charge, do you understand that? |
| The Defendant: | Yes. |
| The Court: | That the Appellate Court might reverse your conviction? |
| The Defendant: | Yes. |

---

[36]     Plea Tr. 15:19–16:8; 43:14–23.  The Court also confirmed with Petitioner's
counsel and with the Government that they were satisfied that Petitioner willingly entered into
the plea with full understanding of the charges, the maximum and minimum penalties he faced,
and the limitations on his legal rights to contest the charges, and that the plea was based on only
the terms in the written plea agreement.  Plea Tr. 44:6–45:2.

[37]     Plea Tr. 12:2–17.

[38]     Plea Tr. 17:17–21:15 (ensuring Petitioner understood (1) he was giving up the
right to challenge his indictment, the grand jury proceedings and to bring evidentiary challenges;
(2) had the right to not plead guilty and proceed to trial, participate through counsel in the
selection of a jury and the right to a unanimous jury verdict; (3) the significant burden of proof
on the government and the presumption of Petitioner's innocence; and (4) Petitioner's right to
not testify without adverse inference and his right to confront witnesses).

The Court:

Do you understand that the only grounds to appeal from a guilty plea are if I impose an illegal sentence, or if there [are] errors in this proceeding that you are preserving by the terms of your plea agreement?

The Defendant:

Yes.

The Court:

Well, I want to review those terms because you have waivers of your rights to appeal from this guilty plea and your sentence . . . . Because of the scope of the waiver or limitations, I would like you to first listen to me as to what your rights to appeal would be if you didn't have these waivers.

Normally you would have a right to appeal any sentence I would impose on you to the higher court which could then modify or set aside your sentence or make me resentence you. The government has that same right of direct appeal, do you understand that?

The Defendant:

Yes.

The Court:

You also would have under normal circumstances the right to bring a later proceeding, what we call a collateral attack by filing what we call a habeas corpus motion in this court to either vacate, set aside, or correct your sentence, do you understand that?

The Defendant:

Yes.

The Court:

Your guilty plea today then greatly limits your rights to appeal or to use a later proceeding, such as a collateral attack and habeas corpus to challenge your conviction, your sentence, or any other matter.

In fact, you have agreed starting in paragraph nine of your plea agreement, page five, that in exchange for the agreements you have with the government in entering this plea, you are voluntarily and expressly waiving all rights to appeal or collaterally attack your conviction, your sentence or any other matter relating to this prosecution, whether that falls under any of the provisions here, 18 United States Code Section 3742, 28 United States Code Section 1291 or 2255, or any other provision of law except, of course, constitutional claims that cannot be waived according to the relevant case law.

Notwithstanding that blanket waiver, if the government appeals from the sentence I would impose, you will have your same full

9

right of direct appeal of the sentence, so that is one way you can still appeal.  But, if the government does not file an appeal of my sentence, then you have only three ways you can file an appeal of my sentence.

One, if I sentence you on any count, and you are pleading guilty to Counts 1 through 7 . . . if I sentence you on any one of those counts and the sentence exceeds or goes above the statutory maximum for that particular crime in that count . . . of course, you can appeal that.

Or if I erroneously, that is I make a mistake, and I depart upward from the advisory sentencing guideline range. . . . [Y]ou can appeal it if I do.

Or if I exercise my sentencing discretion and impose what is called [an] unreasonable sentence which is also above the final advisory guideline range, so that is what you are limited to, do you understand that?

The Defendant:        Yes.[39]

The Court also informed Petitioner during the hearing that the plea agreement contained no agreement as to a term of sentence or the Government's sentencing recommendation, and that the sentencing guidelines were only one factor the Court would consider at sentencing.  After the Government reviewed the applicable statutory maximums and minimums, the Court ensured that Petitioner understood that the gravity of the statutory mandatory minimum and maximum penalties he was facing based on the prior state conviction identified in the Information:

The Court:        I heard some penalties here and I am reading some penalties that strike my ears, so when they strike my ears, I want to repeat them to you.  First of all, the maximum possible penalties for your offenses are life imprisonment, do you understand that?

The Defendant:        Yes.

---

[39]  Plea Tr. 22:4–25:4.

10

| The Court: | The mandatory minimum penalty is twenty years based on your prior conviction, do you understand that? |
| The Defendant: | Yes. |
| The Court: | All right.  Everything else pales in comparison to those two lower and higher barriers and limits, do you understand that? |
| The Defendant: | Yes.[40] |

The Government reviewed in detail the facts underlying the guilty plea, including Petitioner's involvement in the conspiracy and the six separate drug sales comprising the conspiracy charge.  The six sales occurred over a period of approximately two weeks during August 2006 wherein Petitioner sold crack cocaine to a confidential witness on six occasions, in the amounts of 3.4 grams, 6 grams, 5.5 grams, 14 grams, 16.8 grams, and 14.7 grams, for a total of 60.3 grams of crack cocaine.[41]  Petitioner confirmed orally that the government had accurately summarized the facts and admitted he was guilty of those offenses.[42]  The Court then confirmed that Petitioner understood his right to contest those charges and the breadth of the rights he was waiving:

| The Court: | [H]ave you then discussed with Mr. Borden, the charges, your rights to contest those charges, as well as the penalties you are facing? |
| The Defendant: | Yes. |
| The Court: | Do you understand that by pleading guilty and waiving the rights that we have been discussing, you cannot later come to this or any other court and claim that your rights were violated or that you are |

---

[40]     Plea Tr. 34:1–15.

[41]     Plea Tr. 35:15–42:3.  Some of the sales also involved small amounts of heroin.

[42]     Plea Tr. 42:16–43:1.

11

not guilty?

The Defendant:          Yes.[43]

The Court offered Petitioner an opportunity to make any statement to the Court about the case or himself, but Petitioner declined to do so.[44]  At the end of that same proceeding, Petitioner orally professed his plea of guilt to all pending counts in open court.[45]  And prior to accepting Petitioner's guilty plea, the Court found that Petitioner was competent and capable of entering an informed plea to the charges, that the plea was knowing and voluntary and not based on threats, force, or promises other than those contained in the agreement and disclosed on the record, and understood he was waiving his rights to trial and limiting his rights to appeal.[46]

The Presentence Investigation Report ("PSIR") determined that Petitioner's base offense level for the conspiracy charge was 30, pursuant to Section 2D1.1 of the advisory Sentencing Guidelines.  The PSIR further determined that because of his prior felony drug convictions, Petitioner was a career offender under Section 4B1.1 of the Guidelines, which increased his offense level to 37.  That offense level was reduced by 3, pursuant to the terms of Petitioner's Guilty Plea Agreement, for Petitioner's cooperation and acceptance of responsibility for the charged offenses, producing a final offense level of 34.  And because of the prior felonies, pursuant to of the Guidelines, Petitioner's criminal history category was IV, producing, together with the Petitioner's offense level, an advisory Sentencing Guidelines range of 262–327 months

---

[43]          Plea Tr. 43:8–13.

[44]          Plea Tr. 46:17–25.

[45]          Plea Tr. 47:14.

[46]          Plea Tr. 47:15–48:15.

of imprisonment.  Absent the three-level offense reduction, the Guidelines range would have been 360 months to life imprisonment.  The Government recommended 262 months of imprisonment, 10 years supervised release, a $3,000 fine and a $700 special assessment. [47]

Petitioner, through his counsel, filed a Sentencing Memorandum and Brief in Support of Petitioner's Motion for Downward Departure.[48]  Petitioner did not challenge his career offender status under the Sentencing Guidelines, but instead asked the Court to sentence him below the advisory Guidelines range to a term not exceeding 240 months imprisonment—the mandatory minimum sentence that could be imposed.  Petitioner sought a downward departure for a career offender, pursuant to Section 4A1.3(b)(3) of the Guidelines to a range of 235–293 months on grounds that, *inter alia*, Petitioner's prior drug offenses amounted to low-level conduct and involved only small quantities.  Alternatively, Petitioner sought an adjustment under United States v. Booker[49] for a sentence of 20 years imprisonment.[50]  The Government opposed the motion and requested a Guidelines sentence.[51]  During the Sentencing Hearing on October 20, 2008, the Court, upon finding no objections to the PSIR, adopted the facts presented in it.

Prior to sentencing, the Court informed Petitioner of his right to speak to the Court regarding his sentence, and asked whether he had discussed that right with his attorney and

---

[47]    Sentencing Recommendation at 1.

[48]    Def.'s Sentencing Mem. & Br. in Supp. of Mot. for Downward Departure [Doc. No. 140] ("Def.'s Sentencing Mem.") at 3–4.

[49]    543 U.S. 220 (2005).

[50]    Def.'s Sentencing Mem. at 4.

[51]    Sentencing Tr. 7:1–9.

wished to make any statements.[52]  Petitioner confirmed he and his attorney discussed that right

but declined to make any statements beyond expressing a general concern that selling drugs

resulted in such a lengthy sentence and that nothing he would say would change the Court's

sentencing.[53]

During sentencing, the Court declined to consider a downward departure of the offense

level under the Sentencing Guidelines, but instead, considered the nature of the prior offenses

under its discretionary sentencing authority and declined to impose a Guidelines sentence.[54]

Instead, the Court sentenced Petitioner to a term of imprisonment of 240 months—the statutory

mandatory minimum for the conspiracy offense and 22 months below the applicable Guidelines

range.  Additionally, the Court sentenced petitioner to the mandatory minimum of 10 years

supervised release,[55] and imposed a special assessment of $700 and a $2,000 fine.

Petitioner subsequently filed the pending habeas corpus motion, contending that his

counsel was ineffective for failing to challenge Petitioner's career offender status and by failing

to raise a defense of "sentencing entrapment"—that the Government's six successive purchases

of small quantities of crack through a confidential witness unfairly subjected defendant to a

higher mandatory minimum sentence than would have resulted from only the initial individual

sale or sales.[56]  Petitioner also asserts his counsel was ineffective for failing to challenge

---

[52]     Sentencing Tr. 18:10–25.

[53]     Sentencing Tr. 19:25–20; 21:23–22:2.

[54]     Sentencing Tr. 12:13–13:3; 29:3–24; 31:11–19.

[55]     Petitioner was also sentenced a term of supervised release of 10 years for count I,
6 years for count II, and 8 years for each of counts III through VII, to be served concurrently.

[56]     Pet'r's Mem. in Supp. [Doc. No. 165] at 9–10.

purported violations of 21 U.S.C. § 851.  Specifically, Petitioner asserts that Section 851 was

violated because the government failed to serve him with the Information Charging Prior

Offenses prior to his guilty plea and the Court failed to ask Petitioner to affirm or deny the

previous conviction charged in the Information.[57]  The Government subsequently filed a Motion

to Dismiss the Section 2255 Petition, arguing that Petitioner waived his rights to appeal or

collaterally challenge his sentence in his Guilty Plea Agreement.

## II.   DISCUSSION

When reviewing a motion to dismiss a Section 2255 Petition on grounds that a defendant

waived the right to collateral review, Courts should consider  "(1) whether the waiver of the right

to appeal [the] sentence was knowing and voluntary; (2) whether one of the specific exceptions

set forth in the agreement prevents the enforcement of the waiver . . .; and (3) whether enforcing

the waiver would work a miscarriage of justice."[58]

The Court's first task is to ensure that the waiver was entered knowingly and

voluntarily.[59]   Here, as the record demonstrates, during the Change of Plea Hearing, the Court

carefully reviewed with Petitioner the appeal waiver provisions of the Agreement in detail and

---

[57]      See Pet'r's Mem. in Supp. at 8; Pet'r's Resp. to Gov't's Mot. to Dismiss Pet. for
Relief Pursuant to 28 U.S.C. § 2255 (Pet'r's Resp.) at 4.

[58]       United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citation and
quotations omitted).

[59]      See United States v. Mabry, 536 F.3d 231, 237–38 (3d Cir. 2008) ("Whereas a
defendant bears the burden of presenting an argument that would render his waiver unknowing or
involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of
the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the
record evidence before it.").

confirmed that he understood them;[60] confirmed that Petitioner was competent to enter the plea and to participate in the plea hearing that day; ensured that the plea agreement was explained to Petitioner by his counsel; and that his plea was not the result of promises not contained in the agreement or the result of intimidation.  The Court's determination that the plea agreement in general, and the appellate waiver provisions in particular, were entered into by Petitioner knowingly and voluntarily was based on its assessment of Petitioner's responses to the Court's inquiries at the hearing as well as his averments in the Guilty Plea Agreement and Acknowledgment of Rights.  Additionally, the substantial benefits that Petitioner gained from the Agreement support the voluntariness of the appeal waiver:[61] Petitioner received a three-level reduction in the advisory guidelines range and the elimination of the possibility of lifetime imprisonment—the statutory minimum sentence Petitioner would have faced had the Agreement not included the requirement that only one of Petitioner's four prior felony convictions would be identified in the Information Charging Prior Offenses.  Accordingly, the Court finds Petitioner's waiver of his appeal rights was knowing and voluntary.

Because Petitioner's plea agreement and appeal waiver were entered knowingly and voluntarily, the Court next determines whether the issues raised by Petitioner's Section 2255 motion fall into the exceptions to the waiver.[62]  Here, no exceptions apply: The Government has

---

[60]    See United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001) (appeal waiver knowing and voluntary where court complied with Rule 11 of  Federal Rule of Criminal Procedure requiring that the Court address defendant and determine he understands the terms of the provision of a plea agreement waiving the right to appeal or collaterally attack the sentence).

[61]    See United States v. Lake, 330 F. App'x 377, 379 (3d Cir. 2009) (noting that defendant received benefit of reduced sentence from the plea agreement supported voluntariness of waiver).

[62]    See Goodson, 544 F.3d at 536.

not appealed the sentence and Petitioner does not challenge his sentence on grounds that (1) the sentence exceeds the statutory maximums; (2) the Court erroneously departed upward pursuant to the sentencing guidelines; or (3) the Court imposed an unreasonable sentence.  Nor could Petitioner challenge his sentence on these grounds since he was sentenced to the statutory minimum, well below the Sentencing Guidelines range.

Given Petitioner's knowing and voluntary appeal waiver and the inapplicability of any exceptions under the waiver, the Court may entertain Petitioner's Section 2225 motion only if enforcing the waiver would work a miscarriage of justice.[63]  The miscarriage of justice exception is narrow and applies only in extraordinary circumstances where "manifest injustice" would result.[64]  A miscarriage of justice "connotes something grave and out of the ordinary."[65]  Thus, a knowing and voluntary appeal waiver waives both "debatable legal issues" as well as blatant legal error,[66] and courts should find them unenforceable only "sparingly and without undue generosity."[67]

---

[63]     See Mabry, 536 F.3d at 236–37; Khattak, 273 F.3d at 560, 562, 563.

Although Mabry and Khattak applied this standard to direct appeals, it is equally applicable to Section 2255 motions.  See, e.g., United States v. White, 390 F. App'x 114, 116 (3d Cir. 2010) (applying the miscarriage of justice standard to a habeas motion and citing United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001)).

[64]     See Mabry, 536 F.3d at 236–37; United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008); Goodson, 544 F.3d at 533–34; United States v. Gwinnett, 483 F.3d 200, 206 (3d Cir. 2007); Khattak, 273 F.3d at 562.

[65]     Mabry, 536 F.3d at 239.

[66]     Khattak, 273 F.3d at 562 (quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)).

[67]     United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)).

17

The Third Circuit has declined to delineate specific situations in which enforcement would amount to a miscarriage of justice, directing instead that courts should take a fact-specific approach and consider a range of factors to determine whether a waiver is unenforceable:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.[68]

At all times, however, the fundamental question is whether enforcement works a miscarriage of justice.[69]  This Circuit has found only very limited circumstances give rise to a miscarriage of justice such as where the defendant should have been permitted to withdraw the guilty plea,[70] and where the government breached its obligations under the plea agreement.[71]

Additionally, the Third Circuit has identified certain ineffective assistance of counsel claims where enforcing an appeal waiver would work a miscarriage of justice: where a petitioner claims that ineffective assistance of counsel tainted the plea proceedings such that the waiver itself was the product of ineffectiveness;[72] where ineffectiveness prevented a defendant from understanding his plea agreement;[73] and where counsel failed to timely file an appeal raising an

---

[68]     Khattak, 273 F.3d at 563 (alteration in original) (quoting Teeter, 257 F.3d at 25–26).

[69]     Id.

[70]     Wilson, 29 F.3d at 458.

[71]     United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008).

[72]     United States v. Akbar, 181 F. App'x 283, 286 (3d Cir. 2006) (citing Teeter, 257 F.3d at 25 n.9).

[73]     United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007).

issue explicitly exempted from the waiver in the plea agreement.[74]  Though the Third Circuit has not addressed whether ineffective assistance of counsel will, in all circumstances, invalidate a waiver,[75] district courts in this Circuit and courts elsewhere have generally declined to find ineffectiveness claims *unrelated* to the plea process render a waiver unenforceable.[76]  But even where a Petitioner claims ineffectiveness tainted the plea agreement, a waiver does not become unenforceable unless the record demonstrates "'the claim that the waiver was the result of ineffective assistance of counsel [is] meritorious.'"[77]

Here, Petitioner does not argue that his counsel's inadequate performance in failing to raise a sentencing entrapment defense, challenge his career offender designation, or challenge service of the Information or the lack of colloquy was related to his decision to enter the Guilty Plea Agreement and waive his appeal and collateral attack rights, or that counsel's performance otherwise tainted the plea negotiations themselves.  Nor has he offered any evidence that supports such a contention.  And in both open court during the plea colloquy with Petitioner, and in the plea agreement itself, Petitioner averred that he was satisfied with his counsel's representation.  Moreover, that plea colloquy carefully laid out the impact of the prior offense contained in Information Charging Prior Offenses on the statutory mandatory and minimum sentences Petitioner would face at sentencing, yet Petitioner knowingly and voluntarily entered

---

[74]    Id.

[75]    United States v. Padilla-Castro, No. 09-4216, 2011 WL 1667167, at *2 (3d Cir. May 4, 2011).

[76]    See United States v. Robinson, Nos. 04-cv-884, 02-cr-760, 2004 WL 1169112, at *3 (E.D. Pa. Apr. 30, 2004) (collecting circuit court cases).

[77]    Akbar, 181 F. App'x at 286–87 (quoting United States v. Monzon, 359 F.3d 110, 118–19 (2d Cir. 2004)).

into the Guilty Plea Agreement.

The Court further notes that any inadequacy of Counsel in challenging Petitioner's career offender designation relates to conduct at sentencing and thus could not have affected the plea process, therefore falling well within the scope of the appeal rights Petitioner waived.[78]  And, in any event, Counsel's failure to challenge the designation could not work a miscarriage of justice where this Court sentenced Petitioner to the statutory minimum required, resulting in a sentence 22 months below the bottom of the Guidelines range that resulted from his designation as a career offender.

To the extent that this Court should construe Petitioner's challenge regarding the purported violations of 21 U.S.C. § 851 apart from an ineffectiveness claim, the Court further finds no miscarriage of justice from enforcing the appeal waiver.  Section 851(a) requires the Government to serve the Information "on the person or counsel for the person" before entry of a plea.[79]  And Section 851(b) requires that:

> [T]he court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

---

[78]     See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (petitioner cannot dress up a challenge to the sentence received in an ineffective assistance claim where challenges to the correctness of the sentence falls within the scope of the waiver, noting that "[i]f we were to allow a claim of ineffective assistance of counsel at sentencing . . . the waiver of appeal provision would be rendered meaningless").

[79]     21 U.S.C. § 851(a)(1) ("No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.").

As to Petitioner's assertion of a violation of Section 851(a), there could be no miscarriage of justice in enforcing the waiver because there was no error at all. Petitioner claims that Section 851(a) was violated because he was never personally served with the Information and that his counsel was served with the Information after the Guilty Plea Agreement was executed.  But Petitioner's counsel was in fact served with the Information on July 17, 2008, one day prior to the execution of the Guilty Plea Agreement on July 18, 2008.[80]   The Government need not have directly served Petitioner.

And as to Petitioner's assertions of a Section 851(b) violation, the Court likewise concludes there was no miscarriage of justice sufficient to find the waiver unenforceable. Petitioner contends that this Court failed to make the inquiry required under that Section.  Upon review of the transcript, the Court concludes it did not specifically ask Petitioner whether he affirmed or denied the prior convictions prior to imposing sentence.  But, the Court finds that, under the circumstances here, where the Plea Agreement expressly contemplates the Information and expressly includes a stipulation as to the statutory minimum term of incarceration that the Information would trigger, the colloquy was not deficient.  The Guilty Plea Agreement included the requirement that the Government would file an Information containing one prior conviction for a felony drug offense that would trigger the 20-year mandatory minimum term of

---

[80]     Information Charging Prior Offenses at 3.

Petitioner contends that because the Government's Motion to Dismiss asserted that the plea agreement was entered on July 8, see Mot. to Dismiss at 2, a week prior to service of the Information, Section 851(a)(1) was violated. See Pet'r's Resp. at 2–3.  However, the Record demonstrates that the plea agreement was executed on July 18, 2008.  The Court concludes that the Government's assertion is a typographical error.

incarceration and Petitioner stipulated to that minimum term.[81]  Thus, Petitioner effectively

conceded in his Plea Agreement the validity of one of his prior convictions.   And this Court

made clear in the plea colloquy that the prior offense mandated a 20-year minimum sentence.

Further, at the sentencing hearing, Petitioner's counsel asserted there were no objections to the

PSIR, which included all four of Petitioner's prior state felony drug offenses, one of which was

charged in the Information.[82]  The Court also provided Petitioner with the opportunity to address

any issue associated with his sentence.  Petitioner declined to speak other than to assert his view

that his imprisonment would be excessive and that nothing he could say would change his

sentence.[83]  Petitioner therefore had the opportunity to independently challenge the prior

conviction but declined to do so.  Even if these inquiries and notices are insufficient to satisfy the

requirements of Section 851(b), the Court concludes that enforcing the appeal waiver despite the

purported lack of compliance does not work a miscarriage of justice because Petitioner's

Sentencing Memorandum conceded that he had four prior felony drug convictions,[84] and

Petitioner does not now deny the prior conviction, argue that the Information contained any

incorrect data, or claim he was ineligible for the statutory mandatory minimum sentence of 20

years imprisonment due to the prior offense.  Thus any failure to comply with Section 851(b) was

harmless and would not have affected his sentence.[85]

---

[81]     Guilty Plea Agreement ¶ 4.

[82]     Sentencing Tr. 4:6–22.

[83]     Sentencing Tr. 19:4–20:25.

[84]     Def.'s Sentencing Mem. at 3.

[85]     See United States v. Wright, No. 07-1909, 2011 WL 991055, at *4 (3d Cir. Mar. 22, 2011) (failure to conduct Section 851(b) colloquy with defendant did not affect defendant's

Though this Court finds that Petitioner waived his appeal rights knowingly and voluntarily and that enforcing the waiver would not work a miscarriage of justice, out of an abundance of caution, the Court will proceed to evaluate the merits of Petitioner's ineffectiveness claims since they could conceivably "raise the possibility that the alleged inadequate performance of counsel was causally tied to" Petitioner's plea agreement and waiver.[86]

Under Strickland v. Washington, Petitioner bears the burden of demonstrating that his attorney's performance was deficient and that Petitioner was prejudiced by that deficiency.[87] Thus, Petitioner must show that his attorney's performance fell "below an objective standard of reasonableness, and that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."[88] But there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

---

substantial rights where defendant did not claim the data in the Information was incorrect, the prior conviction was included in the presentence investigative report and defendant did not object to the validity of the data that the government presented regarding the prior offenses); United States v. Lopez-Gutierrez, 83 F.3d 1235, 1246–47 (10th Cir. 1996) (failure to conduct Section 851(b) colloquy not prejudicial where defendant "neither argue[d] that he would have raised a challenge to his prior conviction had he been warned by the district court pursuant to Section 851(b), nor [advised] this court how such a challenge might be successful," and counsel conceded the validity of the prior offenses during pre-trial hearing).

[86]     See United States v. Lloyd, No. 07-195, 2010 WL 2375962, at *2 (E.D. Pa. June 8, 2010).

[87]     Shedrick, 493 F.3d at 299 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

[88]     Id. (internal citations and quotations omitted).

the challenged action might be considered sound trial strategy."[89]  Petitioner must satisfy both the performance and prejudice prongs of the Strickland test,[90] so failure on either prong defeats any ineffectiveness claim.  Applying this standard here, Petitioner cannot meet his burden.

First, Petitioner can demonstrate neither that his attorney's failure to raise the defense of sentencing entrapment or sentencing-factor manipulation was deficient nor that he was prejudiced by any such failure to raise these defenses because Petitioner has set forth no facts that demonstrate they are even remotely viable.  Here, though Petitioner claims his attorney should have raised the defense of "sentencing entrapment," the facts he alleges—that the Government continued making drug buys from Petitioner even though Petitioner committed a federal offense during the first such buy—are more suggestive of a claim of sentencing factor manipulation.[91] Because these two concepts have been used interchangeably by some courts[92] and Petitioner is pro se, the Court addresses each.

Sentencing entrapment "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so, and the result is a higher sentence."[93]  Entrapment requires "outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the

---

[89]     Strickland, 466 U.S. at 689 (citations and quotations omitted).

[90]     Boyd v. Waymart, 579 F.3d 330, 376 (3d Cir. 2009).

[91]     See Hall v. United States, No. 97-5936, 1998 WL 887276, at *2 (6th Cir. Dec. 9, 1998).

[92]     United States v. Sed, 601 F.3d 224, 229-30 (3d Cir. 2010) (citing circuit court cases).  The Third Circuit has neither adopted nor rejected the doctrines of sentencing entrapment or sentencing factor manipulation. See id. at 229.

[93]     Sed, 601 F.3d at 230 (citation and quotations omitted).

24

purpose of increasing the amount of drugs . . . and the resulting sentence of the entrapped defendant."[94]  Petitioner has not laid a factual predicate from which the Court can find that Petitioner lacked the predisposition to sell larger quantities of drugs or that the government engaged in conduct that overcame Petitioner's will.  Certainly the Government's conduct in buying progressively larger quantities of drugs from Petitioner does not constitute "outrageous" conduct required for a finding of sentencing entrapment.[95]  Moreover, the record in this case demonstrates that Petitioner sold relatively similar quantities of drugs, though the amount increased slightly with each sale over a short period of time,[96] and Petitioner was previously convicted of four felony drug offenses.

Sentencing-factor manipulation is a due process violation that "occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation, thus increasing the drug quantities for which the defendant is responsible."[97]  As with sentencing entrapment, Petitioner has not laid a factual predicate for a viable sentencing-factor manipulation defense merely by claiming that the Government could have arrested him after the first drug buy in August 2006.  The government is not required to

_____

[94]     United States v. Raven, 39 F.3d 428, 438 (3d Cir. 1994) (citations and quotations omitted) (alterations in original).

[95]     See United States v. Floyd, 375 F. App'x 88, 90 (2d Cir. 2010) (finding government's conduct was not outrageous and facts demonstrated Defendant's predisposition to sell cocaine base where government arranged for Defendant to purchase 70 grams of cocaine after he had already purchased 30 grams from the informant, and noting that "[l]aw enforcement efforts to test the scope of a drug dealer's criminal activities by proposing to purchase increasingly larger quantities of drugs do not constitute 'outrageous official conduct'").

[96]     See supra note 41 and accompanying text.

[97]     Sed, 601 F.3d at 231 (citation and quotations omitted).

arrest a suspect after a single buy, and "it does not offend due process for the police to 'persist in ascertaining what quantity [of drugs a defendant is] willing and able to deal.'"[98] Thus, because the sentencing entrapment and manipulation defenses are clearly inapplicable here, Petitioner cannot establish that his counsel's decision not to raise them fell outside the bounds of reasonable professional assistance,[99] or that, had counsel raised them, the outcome would have been different.[100]

Second, Petitioner cannot demonstrate he was prejudiced by his attorney's failure to challenge his career offender designation under U.S.S.G. § 4B1.1  Under that section, a defendant is a career offender if:

> (1) the Defendant was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[101]

A "prior felony conviction" is one which is punishable by imprisonment for a term exceeding

---

[98]  Id. at 230, 231 (quoting United States v. Shephard, 4 F.3d 647, 649 (8th Cir. 1993)) (alterations in original).

[99]  United States v. Castellanos, No. 94-3967, 1995 WL 660971, at *3 (7th Cir. Nov. 7, 1995) (ineffectiveness claim fails because petitioner's "sentencing entrapment" theory is meritless, and attorneys are not required to raise meritless claims); Bonavita v. United States, No. 94-1847, 1995 WL 138495, at *2 (1st Cir. Mar. 30, 1995) ("Given the inadequate factual foundation for the sentencing factor manipulation argument in this case, counsel's failure to raise the issue did not constitute ineffective assistance.") (citation and quotations omitted).

[100]  United States v. Williams, No. 99-1451, 2000 WL 517930, at *2 (10th Cir. May 1, 2000) (rejecting assertion of ineffective assistance for failure to raise the issue of sentencing enhancement where court could find no circumstances supporting his claim counsel should have raised the issue).

[101]  U.S.S.G. § 4B1.1(a).

one year, regardless of the actual sentence and the classification of the offense by the state.[102]

As noted, the PSIR listed Petitioner's prior drug convictions in state court and Petitioner did not dispute the factual accuracy of the PSIR and the prior convictions listed in it,[103] four of which are felonies.[104]  And Petitioner does not *now* dispute the factual accuracy of any of the prior convictions.  Instead, Petitioner asserts that his prior state level convictions did not warrant career offender status because the state offenses involved only small amounts of drugs, and that consequently the applicable Guideline range should have been 120 to 150 months.[105]  Petitioner's claim is frivolous because it is not the *quantity* of the controlled substance that determines whether the designation applies under the Guidelines, but instead whether the prior offenses were felonies, which Petitioner does not contest.  Accordingly, the failure of Petitioner's counsel to challenge Petitioner's career offender status was not deficient performance.[106] Petitioner could

---

[102]     U.S.S.G. § 4B1.2, Application notes.

[103]     Sentencing Tr. 4:6–20.

[104]     See 35 P.S. § 780-113(a)(3), (f) ("manufacture, delivery, possession with intent to manufacture or deliver a controlled substance" under Schedules I–IV punishable by more than one year in prison).

Defendant's Sentencing Memorandum conceded that four of Petitioner's five convictions were felonies but argued that the small amounts involved warranted a downward departure under U.S.S.G. § 4A1.3(b) because the convictions over-represented his criminal history.  See Def.'s Sentencing Mem. at 3.  Petitioner also concedes in his Habeas memorandum that the prior convictions involved heroin and crack cocaine, see Pet'r's Mem. in Supp. at 9, which are punishable by more than one year.  35 P.S. § 780-113(a)(3), (f).

[105]     Pet'r's Mem. in Supp. at 9, 11.

[106]     See Thelen v. United States, 131 F. App'x 61, 67 (6th Cir. 2005) (failure to challenge career offender status "fell within the realm of professional discretion because there was evidence introduced at trial and in the pre-sentence report that supported the application of the career offender designation").

not have been prejudiced by counsel's failure to challenge the designation because this Court was required to sentence Petitioner to the statutory minimum term of imprisonment of 20 years, based on the single prior offense charged in the Information, regardless of the applicable Guidelines range.[107]

Third, as to Petitioner's claims of ineffectiveness related to Section 851, for the reasons discussed above, Petitioner cannot demonstrate any prejudice from failure to challenge deficiency of service of the Information and the lack of a Section 851(b) colloquy: Petitioner's counsel *was* timely served and Petitioner does not now deny the prior conviction. Thus, had counsel raised these challenges, the sentencing outcome would not have been different.

Accordingly, the Court finds Petitioner's claims for collateral relief are foreclosed.[108]

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the Government's Motion to Dismiss.

An appropriate Order follows.

---

[107]   This Court may depart from a statutory minimum only in two circumstances, neither of which are present here.  United States v. Kellum, 356 F.3d 285, 289 (3d Cir. 2004) (citing "safety valve" factors in 18 U.S.C. § 3553(e), (f) as the "only authority a district court has to depart below a mandatory minimum sentence").

[108]   Because the record conclusively demonstrates that Petitioner is not entitled to relief, the Court need not hold an evidentiary hearing to determine the merits.  21 U.S.C. §2255(b); United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988).